

**ORDERED in the Southern District of Florida on October 24, 2017.**

Paul G. Hyman, Jr., Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                    Case No.: 14-28923-BKC-PGH

Kim C. Crawford,                          Chapter 7

     Debtor.

_____/

### ORDER ON THE ORDER TO SHOW CAUSE WHY BRETT ELAM, ESQ. SHOULD NOT BE SUSPENDED FROM BANKRUPTCY PRACTICE (ECF NO. 347) AND THE BANK OF NEW YORK MELLON'S AMENDED MOTION FOR SANCTIONS AGAINST BRETT ELAM, ESQ. (ECF NO. 337)

**THIS MATTER** came before the Court for hearing on September 19, 2017,

upon the *Order to Show Cause Why Attorney Brett Elam Should Not Be Suspended*

*From Practicing Before the Bankruptcy Court for Making False Statements Regarding*

*Financial Information Relating to the Debtor in Possession Funds and Any Related*

1

*Sanctions* (the "Order to Show Cause") (ECF No. 347) and the *Amended Motion For Sanctions* (ECF No. 337) filed by The Bank of New York Mellon (as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2005-56, Mortgage Pass-Through Certificates Series 2005-56) and Bayview Loan Servicing, LLC (collectively, the "Creditor").

For the reasons that follow, the Court orders that: (1) the Debtor's counsel, Brett Elam, Esq., ("Mr. Elam") shall pay $8,557.50 to the Creditor as sanctions within thirty days of the date of entry of this Order; (2) Mr. Elam shall pay $34,400.00 to the Debtor as sanctions within sixty days of the date of entry of this Order; (3) to the extent that the Debtor paid Mr. Elam any of the $14,350.00 in attorney's fees awarded in this case, Mr. Elam is to return any such payments—unless already accounted for by the aforementioned $34,400.00 payment—to the Debtor within sixty days of the date of entry of this Order; (4) this matter will be referred to the Florida Bar to investigate whether further proceedings against Mr. Elam may be necessary as a result of this Order; and (5) Mr. Elam shall be suspended from practice in the Bankruptcy Court for the Southern District of Florida for the longer of: (a) one year from the date of entry of this Order or (b) upon conclusion of the investigation by the Florida Bar and satisfaction of the required payments to the Creditor and the Debtor.

## PROCEDURAL BACKGROUND AND FINDINGS OF FACT

On August 22, 2014, the Debtor filed her *Voluntary Petition* (ECF No. 1) under chapter 11 of the United States Bankruptcy Code. On November 4, 2014, the Court issued an *Order Granting Application to Employ Brett A. Elam as Attorney for Debtor*

(ECF No. 36). On September 25, 2015, the Debtor filed a *Disclosure Statement* (ECF No. 104) and *Chapter 11 Plan of Reorganization* (ECF No. 105). On November 16, 2015, the Court issued an *Order Setting Hearing to Consider Approval of Disclosure Statement and Setting Deadline for Filing Objections to Disclosure Statement* (ECF No. 116), setting the disclosure hearing for December 22, 2015. On December 15, 2015, the Creditor filed an *Objection to Disclosure Statement and Plan of Reorganization* (the "Objection to Confirmation") (ECF No. 120), arguing, in pertinent part, that the Debtor's Chapter 11 plan failed to provide adequate information to determine the feasibility of the plan. *See* Obj. to Confirmation, ¶ 10. On December 28, 2015, the Debtor filed a *First Amended Disclosure Statement* (ECF No. 127) and a *First Amended Chapter 11 Plan of Reorganization* (ECF No. 128). On April 20, 2016, the Creditor filed an *Objection to Amended Disclosure Statement and Amended Plan of Reorganization* (the "Second Objection to Confirmation") (ECF No. 152), again arguing, in pertinent part, that the Amended Chapter 11 Plan failed to provide adequate information to determine the feasibility of the plan. *See* Second Obj. to Confirmation, ¶ 11.

On September 19, 2016, the Debtor filed a *Second Amended Chapter 11 Plan* (ECF No. 180) and a *Third Amended Chapter 11 Plan* (ECF No. 181), and on October 31, 2016, the Debtor filed a *Fourth Amended Chapter 11 Plan* (ECF No. 197). On January 13, 2017, the Creditor filed an *Objection to Confirmation of Debtor's Fourth Amended Plan of Reorganization and Motion to Dismiss Case or, in the Alternative,*

3

*Motion for Stay Relief* (ECF Nos. 226, 232).[1] *See also Chapter 11 Ballot Rejecting Plan* (ECF No. 227); *Suppl. to Obj. to Confirmation of Fourth Am. Plan* (ECF No. 252).

On January 26, 2017, the Creditor conducted a Rule 2004 Examination of the Debtor. *See Notice of Rule 2004 Examination Duces Tecum* (the "Deposition Notice") (ECF No. 225). On February 6, 2017, the Creditor filed a *Motion to Compel Debtor's Production of Documents* (the "First Motion to Compel") (ECF No. 249), arguing that the Debtor failed to produce most of the documents requested in the Deposition Notice prior to her deposition, if at all—such as all documents relating to the Debtor's assets and financial affairs and any documents on which the Debtor intends to rely at her confirmation hearing. *See* First Mot. to Compel, at 1-3. Following a hearing on the First Motion to Compel on February 15, 2017, the Court entered an *Order Granting Motion to Compel Production of Documents* (ECF No. 253), ordering the Debtor to deliver to the Creditor "all documents in Debtor's possession, custody or control responsive to [the Creditor's] Notice of Rule 2004 Examination Duces Tecum of Debtor [ECF 225], or which relate to Debtor's assets and the value thereof." On February 23, 2017, the Creditor filed a *Motion to Compel Sanctions for Failure to Comply with Court Order* (the "First Motion for Sanctions") (ECF No. 256), citing the "vast number of requested documents" which Mr. Elam still had not produced as required by the Order Granting Motion to Compel Production of Documents and,

---

[1] The same pleading appears at two separate docket entries (ECF Nos. 226, 232) because an objection to confirmation and a motion to dismiss must be coded as separate docket events.

accordingly, requesting that the Court grant the First Motion for Sanctions, deny confirmation of the Debtor's Chapter 11 Plan, and grant the Creditor's Motion to Dismiss the case. *Id.* at 2, 4.

On March 15, 2017, the Court held a hearing on the First Motion for Sanctions and the Objection to Confirmation of Debtor's Fourth Amended Plan of Reorganization and Motion to Dismiss Case or, in the Alternative, Motion for Stay Relief. Thereafter, on March 27, 2017, the Court entered an *Order Granting Motion for Stay Relief* (ECF No. 282), ordering that the Motion for Stay Relief would not become effective until April 14, 2017, and deferring ruling on the Motion to Dismiss to April 14, 2017. On April 4, 2017, the Court entered an *Order Denying Confirmation of Debtor's Fourth Amended Plan of Reorganization and Setting Status Conference* (ECF No. 287), scheduling a status conference for May 9, 2017. The First Motion for Sanctions was also continued for hearing to May 9, 2017. *See* ECF No. 285.

On April 17, 2017, the Debtor filed a *Monthly Operating Report for the Period Beginning March 1, 2017, and Ending March 31, 2017* (the "March 2017 MOR") (ECF No. 293), reflecting a $34,400.00 check paid out of the Debtor's Debtor-in-Possession account (the "DIP Account")[2] on March 2, 2017, to "Brett Elam" as "Payee" and listing "Attorney's Fees" as the "Purpose or Description" of the $34,400.00 check. *See* March 2017 MOR, 10, 17. On April 18, 2017, the Creditor's attorney emailed Mr. Elam "for an explanation as to this [$34,400.00] payment. *See Filing in Further Support of Motion to Dismiss Case* (ECF No. 294), ¶ 7, Ex. A (April 18, 2017, email sent at 8:38

---

[2] TD Bank account number 430-6190812.

5

A.M.). Regarding the $34,400.00 check, Mr. Elam responded to the Creditor's attorney's email inquiry that the "[Debtor] wrote it to me and it is held in trust. I had it for the confirmation hearing. It hasn't been disbursed. I just had it in anticipation of confirmation. I am still holding it." *Id.* at Ex. A (April 18, 2017, email sent at 8:47 A.M.). The Creditor's attorney responded to the foregoing asking Mr. Elam what evidence he could provide to show that the $34,400.00 still remained in his trust account for the Debtor (the "Trust Account")[3] and further asking Mr. Elam if he had a copy of the check. *Id.* (April 18, 2017, email sent at 9:25 A.M.). Mr. Elam responded that he did have a copy of the check and that the "funds [were] there," to which the Creditor's attorney responded asking Mr. Elam to send proof of this and to return the funds to the DIP Account. *Id.* (April 18, 2017, emails sent at 10:03 AM and 10:07 A.M.). Mr. Elam responded that he would send what the Creditor's attorney requested "in the morning." *Id.* (April 18, 2017, email sent at 5:56 P.M.). The following afternoon, on April 19, 2017, the Creditor's attorney emailed Mr. Elam asking why he still had not provided evidence "that the $34,400 [was], and always [had] been, in" the Trust Account, adding that Mr. Elam's "unfulfilled promises to do so [was] causing [the Creditor's attorney] to think that the situation [was] not as [Mr. Elam] claimed it to be." *Id.* (April 19, 2017, email sent at 4:09 P.M.). Mr. Elam responded that if he told the Creditor's attorney that he "would send [him] something . . . which [he didn't] recall doing or seeing, then [he would]," but that he was currently "trying

---

[3] Seacoast Bank account ending in 7647. *See Trust Account Records* (ECF No. 356, filed September 22, 2017).

to get caught up" after having been out of the office to spend time with his family. *Id.* (April 19, 2017, email sent at 4:41 P.M.). The Creditor's attorney responded that he would "proceed accordingly" and that these email exchanges would serve as the Creditor's "good faith effort to resolve this issue without court intervention." *Id.* (April 19, 2017, email sent at 5:00 P.M.). In the Filing in Further Support of Motion to Dismiss Case, the Creditor noted that as of the time of filing, Mr. Elam still had not provided "proof that the subject funds [had] been held in his trust account." *See* Filing in Further Supp. of Mot. to Dismiss Case, at ¶ 10.

On April 21, 2017, the Creditor filed the Filing in Further Support of Motion to Dismiss Case, wherein the Creditor asserted that:

> The main purpose for this filing is to bring to the Court's attention that the Debtor's March 2017 MOR reflects that on March 2, 2017, check number 256 in the sum of $34,400 cleared the Debtor's DIP account at TD Bank, and is reflected as having been paid to "Brett Elam" for "Attorneys Fees." Moreover, the Debtor's cash position in her MOR was reflected as having been reduced by the $34,400.00. But the Court did not award attorney's fees to Brett Elam at the March 15, 2017 confirmation [hearing] . . . .

*See* Filing in Further Supp. of Mot. to Dismiss Case, ¶ 6; March 2017 MOR, 10, 17. However, the *Order Allowing Interim Fees to Brett A. Elam, P.A.* (ECF No. 64) was not entered until twenty eight days *after* Mr. Elam allegedly accepted the $34,400.00 check for "Attorney's Fees."

On May 9, 2017, at 11:34 A.M.—less than two and a half hours before the 1:00 P.M. hearing on the Creditor's First Motion for Sanctions—the Debtor filed an *Amended Monthly Operating Report for the Period from March 1, 2017, to March 31,*

*2017* (the "Amended March 2017 MOR") (ECF No. 296)*, specifying that $34,400.00 in

legal fees was "being held in" the Trust Account "pending approval" of the Debtor's

plan. *See Am. March 2017 MOR*, at 8. Specifically, Mr. Elam asserted that:

> In anticipation of confirmation hearing March 15, 2017, the [Debtor]
> tendered a check for Admin fees to counsel. These funds were deposited
> into counsel's trust account. As the Court failed to confirm the Plan,
> those fees were not approved. The fees are in counsel's trust account
> pending approval from the Court.

*Id.* at 2. On May 9, 2017, at 1:00 P.M., the Court conducted the status conference

hearing and considered the Creditor's Motion to Compel Sanctions for Failure to

Comply with Court Order. At the May 9, 2017, hearing, the Creditor acknowledged

that Mr. Elam amended the March 2017 Monthly Operating Report to show that the

$34,400.00 was is in the Trust Account, but still had not proved that this money was

*always* in the Trust Account. *See* May 9, 2017, Hr'g, at 1:28 P.M. Mr. Elam responded

that the $34,400.00 was "put in [his] trust account based on a pending confirmation

hearing" and "would be available to pay down . . . whatever [he] needed to do." *Id.* at

1:32 P.M.

On May 16, 2017, the Court entered an *Order on Status Conference* (ECF No.

299), which in pertinent part: (1) denied without prejudice the Creditor's Motion to

Dismiss and ordered that if the Debtor cannot confirm a reorganization plan by July

28, 2017, the Court would grant the Creditor's Motion to Dismiss; and (2) ordered Mr.

Elam to provide the Creditor with a true and correct copy of his redacted Trust

Account statement(s) reflecting that the sum of $34,400.00 paid out of the DIP

Account on March 2, 2017, had *always* been maintained in the Trust Account. On

8

May 16, 2017, the Court also entered an *Order Granting Motion to Compel Sanctions for Failure to Comply with Court Order* (ECF No. 300), granting the First Motion for Sanctions only to the extent that the Debtor would be "precluded from relying upon or seeking to introduce into evidence in any proceeding in this matter any documents that existed and which were not previously produced" prior to May 9, 2017, and imposing other discovery requirements on Mr. Elam with regards to expert reports and witnesses.

On May 19, 2017, the Debtor filed a *Motion for Extension of Time to Comply with Court Order and Produce Expert Reports* (ECF No. 302), requesting a seven day extension "to produce all financial documents, including the expert reports upon which she would rely at the contested confirmation hearing scheduled on any new Chapter 11 Plan of Reorganization." *See* Mot. for Extension of Time, 5. On May 22, 2017, the Creditor filed a *(I) Response to Debtor-in-Possession's Motion for Extension of Time to Comply with Court Order and Produce Expert Reports and (II) Motion to Compel Production of Trust Account Documents* (the "Response and Motion to Compel Production") (ECF No. 305), stating that while the Creditor had no objection to the specific extension requested, the Extension Motion continued "to advance the same plan concept already rejected by this Court." *See* Resp. and Mot. to Compel Produc., ¶¶ 2-3. In addition, the Creditor alleged in the Motion to Compel Production portion of the filing, that the Debtor was in violation of the Court's Order on Status Conference insofar as Mr. Elam still had not provided "any proof that the $34,400 *always* resided in his trust account," as required by the Order on Status Conference,

and requested that the Court compel Mr. Elam "to demonstrate that the $34,400 always resided in his trust account." *Id.* at ¶ 3, 6 (emphasis added).

On June 12, 2017, the Court entered an *Order Granting Motion to Compel Production of Trust Account Documents* (ECF No. 313), ordering Mr. Elam to provide the Creditor with "true and correct copies of his firm's trust account records for March through May 2017, reflecting the DIP Account maintained in the [Trust Account]." On June 19, 2017, the Creditor filed a *Motion for Order to Show Cause Why Debtor's Counsel Brett Elam Should Not Be Held in Contempt and for Sanctions* (the "Motion for Order to Show Cause") (ECF No. 318), citing Mr. Elam's "continuing failure to provide trust account records reflecting what he did with the $34,400 paid out of the Debtor's DIP account on March 2, 2017 . . . ." Mot. for Order to Show Cause, 1. In the Motion for Order to Show Cause, the Creditor asserted that Mr. Elam failed to comply with two separate court orders regarding production of the pertinent Trust Account records: (1) the Order on Status Conference; and (2) the Order Granting Motion to Compel Production of Trust Account Documents. *Id.* at ¶ 5. Accordingly, the Creditor requested that the Court enter an order requiring Mr. Elam "to show cause why he should not be held in civil contempt of Court for willfully violating the Order on Status Conference and Trust Account Order," and awarding the Creditor "reasonable attorneys' fees and costs incurred in obtaining the trust account records against Mr. Elam." *Id.* at 4.

On June 27, 2017, the Debtor filed a *Motion to Vacate Order Granting Motion to Compel Production of Trust Account Documents* (ECF No. 322). On July 11, 2017,

10

the Court held a hearing on the Motion for Order to Show Cause and on the Motion to Vacate Order Granting Motion to Compel Production of Trust Account Documents. On July 14, 2017, the Court entered an *Order Denying Debtor-in-Possession's Motion to Vacate Order Granting Motion to Compel Production of Trust Account Documents* (ECF No. 328) and an *Order Dismissing Case with Prejudice* (ECF No. 330) "as a result of it becoming obvious that the Debtor would be unable to confirm a Plan of Reorganization" and the Debtor's resultant consent "to the immediate dismissal of her bankruptcy case." Order Dismissing Case with Prejudice, 1-2. The Court also denied the Motion for Order to Show Cause without prejudice.

On July 19, 2017, the Creditor filed an *Amended[4] Motion for Sanctions* (the "Amended Motion for Sanctions") (ECF No. 337) requesting, "pursuant to 11 U.S.C. § 105(a)," that the Court require Mr. Elam "to reimburse [the Creditor] for the reasonable attorney's fees it has incurred with respect to the improper disbursement of the DIP Funds" and "to return the DIP Funds to the Debtor." *See* Am. Mot. for Sanctions, 1, 3. On August 29, 2017, the Court held a hearing on the Amended Motion for Sanctions, which, notably, Mr. Elam did not attend. At the hearing on the Amended Motion for Sanctions, the Creditor's attorney explained that he noticed $34,400.00 missing from the DIP Account upon review of the Debtor's March 2017 MOR. *See* March 2017 MOR, 10 (showing a $34,400.00 checks paid out of the DIP on March 2, 2017). The Creditor's attorney detailed his many efforts to get Mr. Elam to

---

[4] The Creditor initially filed a *Motion for Sanctions* (ECF No. 332) on July 18, 2017. However, on July 19, 2017, the Creditor filed the Amended Motion for Sanctions, amended only "to include redacted exhibits." *See* Am. Mot. for Sanctions, 1 n.2.

explain what happened to the $34,400.00, which Mr. Elam had previously asserted was being held for the purposes of confirmation and were never dispersed from the Trust Account, and attached emails between the Creditor's attorney and Mr. Elam regarding the Creditor's ongoing attempts to get Mr. Elam to produce *complete* Trust Account records. *See* Am. Mot. for Sanctions, Exs. A-D. The Creditor asserted that the pertinent Trust Account statements which Mr. Elam ultimately emailed the Creditor on July 11, 2017, showed that on March 2, 2017, the $34,400.00 was deposited from the DIP Account into the Trust Account, increasing the Trust Account balance to $39,408.28. *See* Am. Mot. for Sanctions, Ex. A, 6 (email sent at 9:29 PM on July 11, 2017). The Creditor asserted that sometime between March 2, 2017 and March 31, 2017, the Trust Account balance dropped from $39,408.28 to $30,458.34, and the account records that Mr. Elam provided to the Creditor made no indication of where this roughly $8,950.00 disbursement went. *Id.* at 7. The Creditor also asserted that on April 28, 2017, the Trust Account balance dropped to roughly[5] $22,520.00 (i.e., another disbursement of roughly $8,000.00). *Id.* However, on May 11, 2017—two days after the Court heard the Creditor's Motion to Compel Sanctions for Failure to Comply with Court Order and ordered Mr. Elam to prove that the $34,400.00 in question was *always* in the Trust Account—the Trust Account's balance was back up to $34,836.12. *Id.* at 8.

On September 1, 2017, the Court entered the Order to Show Cause, ordering Mr. Elam to appear for an evidentiary hearing to show cause (the "Show Cause

---

[5] The amount of cents is not visible on the bank statement.

Hearing") as to why he should not be suspended from practicing before the Bankruptcy Court, in addition to other sanctions requested by the Amended Motion for Sanctions, for: (a) making false statements regarding financial information relating to the Debtor-in-Possession funds (the "DIP Funds"); and (b) making improper disbursements of the DIP Funds from the Trust Account. The Court further directed Mr. Elam to produce at the Show Cause Hearing any and all Trust Account statements and related records reflecting the receipt and disbursement of the DIP Funds from March 2017 to the present, including the recipient of the disbursements, adding that the Court would determine at the Show Cause Hearing the amount of reasonable attorney's fees and costs that Mr. Elam would pay to the Creditor regarding the Creditor's discovery efforts relating to the DIP Funds.

At the September 19, 2017, Show Cause Hearing on the Amended Motion for Sanctions and the Order to Show Cause, the Court asked Mr. Elam why he should not be suspended from practice for lying to the Court and misappropriating funds from the Trust Account. Mr. Elam responded that if he told the court the DIP Funds were "always" in the Trust Account, then that was "incorrect" and he "apologize[d]." *See* Show Cause Hr'g, at 9:34 A.M. Mr. Elam further stated that he took the DIP Funds out of the Trust Account "in an emergency situation and they were put back." *Id.* **Mr. Elam testified that "the funds were there, and [his] wife had surgery, and [he] needed to use the funds to live for a bit and when [they] got the funds, [they] put them back."** *Id.* at 11:01 A.M (emphasis added). Mr. Elam also testified that he could not recall on what exactly he spent the DIP Funds and that he

13

had no communication with the Debtor regarding his withdrawal of the DIP Funds from the Trust Account.

Finally, at the Show Cause Hearing, the Creditor's attorney testified regarding the attorney's fees and costs that the Creditor incurred in trying to get Mr. Elam to produce the pertinent Trust Account and DIP Funds evidence. *See* Ex. F ("Fee Statements," reflecting 43.9 hours of work billed at $15,509.01—$14,450.00 in attorney's fees and $1,059.01 in costs—containing both redacted and unredacted time entries). The Creditor's attorney added that the time entries in the Fee Statements end on September 13, 2017, making them non-inclusive of the time he spent preparing for the Show Cause Hearing, which he explained necessitated 5 hours of work at $350.00[6] per hour, totaling $1,750.00 in additional attorney's fees that he was seeking as sanctions—bringing the total amount of requested sanctions to $17,259.01 for 48.9 hours of work.

The Creditor's attorney represented at the Show Cause Hearing that the unredacted charges in the Fee Statements represent time spent on the Trust Account and DIP Funds discovery issues (i.e., not on other issues in the case). The Creditor's attorney explained that he did not include in the total amount requested as sanctions any of the redacted time entries. However, the Creditor's attorney admitted that various unredacted time entries reflected work on the Trust Account and DIP Funds discovery issues *in addition to* another issue in the case in the same time entry, and

---

[6] The Creditor's attorney testified that his standard rate is $550.00 per hour but he charges the Creditor a reduced rate of $350.00.

14

that he discounted by fifty percent any such multi-purpose time entries. The Creditor's attorney testified that the unredacted time entries do not reflect the above-mentioned discounts, but that the calculation of 43.9 hours does. Finally, Mr. Elam cross-examined the Creditor's attorney with regards to which specific time entries should be discounted and by how much, which the Court has incorporated into its determination of the reasonable amount of attorney's fees that Mr. Elam will be required to pay the Creditor as sanctions.

At the conclusion of the Show Cause Hearing, the Court directed Mr. Elam to produce *complete* Trust Account records by September 22, 2017. On September 22, 2017, Mr. Elam filed complete Trust Account records, reflecting the $34,400.00 deposit into the Trust Account on March 2, 2017, and eighteen separate withdrawals—ranging from $250.00 to $6,200.00—made from the Trust Account between March 2, 2017, and May 11, 2017. *See* ECF No. 356.

## CONCLUSIONS OF LAW

For the reasons that follow, the Court finds it appropriate to impose "both compensatory sanctions (monetary sanctions) and sanctions designed to coerce compliance (suspension)" on Mr. Elam pursuant to 11 U.S.C. § 105, Local Rule 2090–2(B)(1), and, alternatively, the Court's inherent power to sanction civil contempt. *See Ginsberg v. Evergreen Sec., Ltd. (In re Evergreen Sec., Ltd.),* 570 F.3d 1257, 1280 (11th Cir. 2009). Pursuant to 11 U.S.C. § 105(a), bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and take any action or make any determination "necessary or appropriate

15

to enforce or implement court orders or rules, or to prevent an abuse of process." The Eleventh Circuit has held that the language of § 105 encompasses the court's power to "award monetary and other forms of relief" and issue "any type of order, whether injunctive, compensatory or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.'" *Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1389-90 (11th Cir. 1996) (internal citation omitted); *see also Franken v. Mukamal*, 449 F. App'x 776, 778 (11th Cir. 2011) (affirming a sanctions award against an attorney who, in pertinent part, was "responsible for submitting false and misleading documents to the court"). Indeed, "bankruptcy courts enjoy broad discretion under § 105 to fashion their orders." *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1325 (11th Cir. 2015); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (noting that the appellate court reviews a court's imposition of sanctions only for abuse of discretion).

A finding of bad faith is not required to impose sanctions under § 105, which "grants statutory contempt powers in the bankruptcy context, distinct from the court's inherent contempt powers in bankruptcy proceedings." *Hardy*, 97 F.3d at 1389-90 (noting that while a party "may be cited for contempt under the court's inherent powers only upon a showing of 'bad faith,'" a party can be found "liable for contempt under § 105 if it *willfully* violated" a court order (internal citation omitted)). Accordingly, the "focus" of a court's inquiry in a civil contempt proceeding brought pursuant to § 105 "is not on the subjective beliefs or intent of the alleged

16

contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Hardy*, 97 F.3d at 1390.

In order to make an initial finding that a party was in contempt of a court order, the Court must find that the party seeking a civil contempt finding "prove[d] by clear and convincing evidence that the respondent violated a court order." *U.S. v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984); *see also McLean*, 794 F.3d at 1326 (noting that findings of civil contempt "must be based on clear and convincing evidence that a court order was violated"). Once the Court finds that civil contempt was proven by clear and convincing evidence, the Court may impose civil contempt sanctions pursuant to § 105 "for either or both of two distinct purposes, to coerce compliance with a court order, and to compensate the complainant for actual losses sustained by him as the result of the defendants' contumacy." *Granfinanciera, S.A. v. Nordberg (In re Chase & Sanborn Corp.)*, 872 F.2d 397, 400-01 (11th Cir. 1989).[7] Finally, courts may also impose sanctions for professional misconduct. *In re Parker*, 485 F. App'x 989, 991 (11th Cir. 2012) (reaffirming a bankruptcy court's order permanently disbarring an attorney from practice in the bankruptcy court pursuant to 11 U.S.C. § 105 and the court's inherent powers where the attorney misappropriated client funds and made false statements in court filings).

---

[7] The Eleventh Circuit has noted that the "requirements of due process in a civil contempt proceeding are flexible, varying with the circumstances of each case." *Mercer v. Mitchell,* 908 F.2d 763, 769 n.11 (11th Cir. 1990). However, "[a]t most, due process requires only 'skeletal' protections in civil contempt proceedings: a show-cause order providing notice and a hearing in which the alleged contemnor, who may be represented by counsel, can introduce evidence rebutting the allegation of contempt and testify on its own behalf." *McLean*, 794 F.3d at 1324 (distinguishing this standard from the "more stringent" due process protection required for *criminal* contempt proceedings).

Here, the Court finds that Mr. Elam committed professional misconduct warranting sanctions by misappropriating his client's Trust Account funds for personal use, in clear violation of the Rules Regulating the Florida Bar, which provide, in pertinent part, that:

> A lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation.
>
> Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied *only* to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney's fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion.

*See* R. Regulating Fla. Bar, 5-1.1 Trust Accounts (emphasis added). As explained in the Procedural Background and Findings of Fact section above, Mr. Elam admitted at the Show Cause Hearing that he took the DIP Funds out of the Trust Account for his own personal use, stating that he "needed to use the funds to live for a bit." *See* Show Cause Hr'g, at 9:34 A.M, 11:01 A.M. Therefore, by using the Trust Account funds for personal living expenses, Mr. Elam committed professional misconduct by failing to keep the Trust Account funds "separate from [his] own property" and failing to apply the Trust Account funds "only to" the "specific purpose" for which the funds were being held. *See* R. Regulating Fla. Bar, 5-1.1(a-b).

Further, the Court finds that Mr. Elam made false representations to the Court by listing "Attorney's Fees" as the "Purpose or Description" of the $34,400.00 check at issue in the Debtor's March 2017 MOR, because Mr. Elam admitted that he used

18

the $34,400.00 disbursement for personal living expenses. Finally, the Court finds that the Creditor proved by clear and convincing evidence that Mr. Elam willfully violated two separate court orders regarding production of the pertinent trust account records: (1) the Order on Status Conference (ECF No. 299), and (2) the Order Granting Creditor's Motion to Compel Production of Trust Account Documents (ECF No. 313). As explained in the Procedural Background and Findings of Fact section above, the Order on Status Conference required Mr. Elam to provide the Creditor with a true and correct copy of his redacted Trust Account statement(s) reflecting that the $34,400.00 paid out of the DIP Account on March 2, 2017, had always been maintained in the Trust Account. Due to Mr. Elam's continued failure to provide such documentation, the Court's subsequent Order Granting Motion to Compel Production of Trust Account Documents directed Mr. Elam, once again, to provide the Creditor with the pertinent Trust Account documentation. However, Mr. Elam did not produce *complete* Trust Account records until September 22, 2017—more than four months after he was originally ordered to do so in the Order on Status Conference. *See also* Order Granting Motion to Compel Sanctions for Failure to Comply with Court Order (ECF No. 300).

Accordingly, the Court may award civil contempt sanctions pursuant to § 105(a) to the Creditor and to the Debtor to compensate them for actual losses they sustained as the result of Mr. Elam's: (1) willful contempt of Court; (2) professional misconduct; and (3) false representations made to the Court.

### I.     Authority to Suspend an Attorney from Practice Before the Court Pursuant to Local Rule 2090–2(B)(1)

In addition to the Court's ability to suspend an attorney from practice pursuant to 11 U.S.C. § 105(a), as explained above, the Court's Local Rules specifically provide that:

> Upon order to show cause entered by at least one judge, any attorney appearing before the court may, after 30 days' notice and hearing and for good cause shown, be suspended from practice before the court, reprimanded or otherwise disciplined, by a judge whose order to show cause initiated the disciplinary proceedings.

Local Rule 2090–2(B)(1). Having issued an Order to Show Cause and held a hearing on same, the Court finds that Mr. Elam has been provided with proper notice and appropriate proceedings in which to defend his conduct. The Court finds Mr. Elam's conduct—specifically, misappropriating his client's funds for his personal use, making false representations to the Court (i.e., writing "Attorney's Fees" on the March 2017 MOR as the purpose of the March 2, 2017, $34,000.00 disbursement which, as Mr. Elam eventually admitted, he used for personal living expenses), and willfully violating multiple court orders (i.e., the Order on Status Conference and the Order Granting Motion to Compel Production of Trust Account Documents)—to be inexcusable and warrants suspension from practice before the United States Bankruptcy Court for the Southern District of Florida and referral of the matter to the Florida Bar Attorney Consumer Assistance Program (ACAP) to investigate whether further proceedings against Mr. Elam may be necessary. *See generally The Florida Bar v. Mirk*, 64 So. 3d 1180, 1185 (Fla. 2011) (approving the Florida Bar

referee's recommendation of disbarment where an attorney made "secret withdrawals from his client trust account without his client's knowledge or permission," noting that "attorney misconduct involving the misuse or misappropriation of client funds is unquestionably one of the most serious offenses a lawyer can commit" and that "disbarment is presumed the appropriate discipline when an attorney engages in this type of misconduct," with the presumption of disbarment being "exceptionally weighty when the attorney's misuse is intentional rather than a result of neglect or inadvertence").

## II. The Court's Inherent Power to Impose Sanctions for Civil Contempt and to Suspend an Attorney from Practice Before the Court

In addition to the statutory authority to impose sanctions for contempt discussed in the preceding sections, the Supreme Court of the United States has held that "[a]ll courts, whether established under Article I or Article III, have the inherent power to enforce compliance with their lawful orders by imposing sanctions for contempt." *Chambers,* 501 U.S. at 43 (noting that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct"). Moreover, a federal court has the "power to control admission to its bar and to discipline attorneys who appear before it" pursuant to its inherent powers. *Id.* Further, in "narrowly defined circumstances," federal courts have "inherent power to assess attorney's fees against counsel . . . even though the so-called 'American Rule' prohibits fee shifting in most cases." *Id.* at 45 (affirming the Fifth Circuit Court of Appeals' finding that the district court acted within its discretion in invoking its

inherent power to assess as a sanction for a party's bad-faith conduct attorney's fees and related expenses). Indeed, a court "may assess attorney's fees against the responsible party" pursuant to its inherent powers where the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," or where a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.* at 46.

Accordingly, the Court has the authority to suspend from practice and assess attorney's fees against Mr. Elam pursuant to its inherent powers because the Court finds, as detailed above, that Mr. Elam committed fraud upon the Court by making false representations to the Court (i.e., writing "Attorney's Fees" on the March 2017 MOR as the purpose of the pertinent $34,000.00 disbursement which, as Mr. Elam eventually admitted, he used at least in part for personal living expenses), willfully violating multiple court orders (i.e., the Order on Status Conference and the Order Granting Motion to Compel Production of Trust Account Documents), and misappropriating his client's funds for his own personal use. In making this finding, the Court is cognizant that the Supreme Court of the United States has advised that a court must "exercise caution in invoking its inherent power," noting that while a court "may safely rely on its inherent power," where there is "bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, [courts] ordinarily should rely on the Rules rather than the inherent power." *Chambers,* 501 U.S. at 50. Accordingly, the Court notes its ability to suspend Mr. Elam from practice before this Court as well as to award attorney's fees against Mr. Elam pursuant to its

inherent powers only as an *alternative*, as the Court finds that Mr. Elam's conduct is sanctionable under 11 U.S.C. § 105 and Local Rule 2090–2(B)(1).

### III.    The Reasonableness of the Amount of Attorney's Fees and Costs Incurred by the Creditor as a Direct Result of Mr. Elam's Conduct

As explained above, the Creditor's attorney testified at the Show Cause Hearing concerning the reasonableness and necessity of incurring the attorney's fees and costs reflected in the Fee Statements regarding discovery efforts related to the pertinent Trust Account and DIP Account records. Having reviewed the Fee Statements and in light of the nature, extent, and value of the Creditor's attorney's legal services and the Creditor's attorney's testimony as to which time entries should be discounted and by how much, the Court finds that $8,557.50 is a reasonable amount of sanctions to be awarded to the Creditor as attorney's fees that the Creditor incurred as a direct result of Mr. Elam's conduct. The Court concludes that $8,557.50 is a reasonable amount of sanctions to be awarded to the Creditor because this amount represents half of the 48.9 hours of work, at $350.00 per hour, which the Creditor sought as sanctions. This reduction by half is warranted by the fact that the Creditor's attorney admitted that many of the time entries on his Fee Statements represented work on matters *other than* the Trust Account and DIP Funds discovery issue.

The Court finds $8,557.50 to be a reasonable amount of attorney's fees in terms of the nature, extent, and value of the services provided with regards to the Trust Account and DIP Funds discovery issues. The Court also finds that $8,557.50

represents a reasonable amount of time spent on and rates charged for such services by the Creditor, commensurate with the complexity, importance, and nature of the problem addressed. Finally, the Court finds that $8,557.50 of the legal costs and fees incurred by the Creditor as a direct result of Mr. Elam's conduct were reasonable based on the customary compensation charged by comparably skilled practitioners, were not unnecessary duplicative, and were reasonably necessary to adequately respond to Mr. Elam's continued failure to produce the pertinent Trust Account records as ordered by the Court on multiple occasions.

## IV.    *Attorney's Fees Awarded to Mr. Elam*

On March 30, 2015, the Court entered an *Order Allowing Interim Fees to Brett Elam, P.A.* (ECF No. 64), awarding Brett Elam, P.A. $14,350.00 in attorney's fees and $0.00 in expenses on an interim basis. *See Interim Application for Compensation* (ECF No. 43) (requesting $14,350.00 in attorney's fees and $0.00 in expenses for the period of August 22, 2014, to February 4, 2015). An award on an interim basis is subject to later determination as to the amount and reasonableness of such fees after consideration of the factors enumerated in 11 U.S.C. § 330(a)(3-4). On August 30, 2016, Mr. Elam filed an *Amended Application for Final Compensation* (ECF No. 175), requesting $34,370.00 in attorney's fees and $30.00 in expenses. *See Application for Final Compensation* (ECF No. 171) (requesting $20,020.00 in attorney's fees and $0.00 in expenses). The Court never entered an order on the Amended Application for Final Compensation.

24

## V.    *The Sanctioned Party's Ability to Pay the Contemplated Sanction*

The Eleventh Circuit has instructed that sanctions "must never be hollow gestures" but also "must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002). Accordingly, a party may claim "inability to pay a sanction" as a defense to a contemplated sanction. *U.S. v. Coulton*, 594 F. App'x 563, 568 (11th Cir. 2014). However, inability to pay is treated as an affirmative defense, meaning that it is "waived if not asserted" and that the party who asserts inability to pay bears the burden of proof on that issue. *Id.* (explaining that the Court "need not explicitly, or even implicitly, evaluate a person's ability to pay a sanction unless that person asserts to the . . . court an inability to pay the sanction"); *see also Sussman v. Salem, Saxon & Nielsen, P.A.*, 150 F.R.D. 209, 217 (M.D. Fla. 1993) (noting that inability to pay a sanction "should be regarded as akin to an affirmative defense with the burden placed upon the sanctioned parties to present financial status information"). Here, Mr. Elam did not assert an inability to pay a sanction—neither in his pleadings nor in court. Accordingly, the Court need not assess his ability to pay these sanctions.

## ORDER

Accordingly, the Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that:

1. Mr. Elam is determined to have committed professional misconduct, warranting sanctions pursuant to 11 U.S.C. § 105(a), Local Rule 2090–2(B)(1),

and, in the alternative, pursuant to the Court's inherent powers, in order to compensate the Creditor and the Debtor for actual losses sustained by them as the result of Mr. Elam's conduct (i.e., attorney's fees and costs) as well as to coerce compliance (i.e., suspension).

2. Mr. Elam is determined to have willfully violated multiple court orders, warranting sanctions pursuant to 11 U.S.C. § 105(a), Local Rule 2090–2(B)(1), and, in the alternative, pursuant to the Court's inherent powers, in order to compensate the Creditor and the Debtor for actual losses sustained by them as the result of Mr. Elam's conduct (i.e., attorney's fees and costs) as well as to coerce compliance (i.e., suspension).

3. Mr. Elam is determined to have made false representations to the Court, warranting sanctions pursuant to 11 U.S.C. § 105(a), Local Rule 2090–2(B)(1), and, in the alternative, pursuant to the Court's inherent powers, in order to compensate the Creditor and the Debtor for actual losses sustained by them as the result of Mr. Elam's conduct (i.e., attorney's fees and costs) as well as to coerce compliance (i.e., suspension).

4. Pursuant to Local Rule 2090–2(B)(1), 11 U.S.C. § 105(a), and, in the alternative, the Court's inherent powers, Mr. Elam is **SUSPENDED** from practice before the United States Bankruptcy Court for the Southern District of Florida, effective thirty days from the date of entry of this Order, for the longer of: (1) one year from the date of entry of this Order; or (2) upon

conclusion of the investigation by the Florida Bar *and* satisfaction of the required payments provided below.

5. Mr. Elam shall file a Motion to Withdraw as Attorney of Record from all of his currently active cases case in the United States Bankruptcy Court for the Southern District of Florida within 30 days of entry of this Order.

6. Effective thirty days from the date of entry of this Order, Mr. Elam is hereby prohibited from filing any pleadings or other papers in this or any other bankruptcy case in the United States Bankruptcy Court for the Southern District of Florida—with the sole exception of Motions to Withdraw as Attorney of Record in any currently active cases—without prior written Order of this Court granting him permission in each instance to file such pleading or paper for a period of one year *or* upon conclusion of the investigation by the Florida Bar and satisfaction of the required payments provided below—whichever is longer.

7. This matter is hereby referred to the Florida Bar Attorney Consumer Assistance Program (ACAP) to investigate whether further proceedings against Mr. Elam may be necessary as a result of this Order.

8. Mr. Elam is directed to pay $8,557.50 directly to the Creditor as a sanction pursuant to 11 U.S.C. § 105(a) and, in the alternative, the Court's inherent powers, within 30 days of entry of this Order, absent agreement of the Creditor to a different time period.

9.  Mr. Elam is to pay $34,400.00 to the Debtor, representing the amount that he transferred from the DIP Account into the Trust Account on March 2, 2017, as a sanction pursuant to 11 U.S.C. § 105(a) and, in the alternative, the Court's inherent powers, within 60 days of entry of this Order, absent agreement of the Debtor to a different time period.

10. To the extent that the Debtor paid Mr. Elam any of the $14,350.00 in attorney's fees awarded, Mr. Elam is to return any such payments—unless already accounted for by the payment required in paragraph 9 above—to the Debtor as a sanction pursuant to 11 U.S.C. § 105(a) and, in the alternative, the Court's inherent powers, within 60 days of entry of this Order, absent agreement of the Debtor to a different time period.

11. The Court will issue a separate final judgment contemporaneously with this Order.

### 

Copies furnished to:

Brett Elam, Esq.

Gary Freedman, Esq.

Kim C. Crawford, Debtor

Heidi Feinman, Trustee

AUST

The Florida Bar, Attn: ACAP Dept.
651 East Jefferson Street
Tallahassee, FL 32399