

**ORDERED in the Southern District of Florida on April 29, 2021.**

_Mindy A. Mora_
_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                               Case No. 14-28923-MAM

Kim Crawford,                                 Chapter 11 (dismissed)

      Debtor.
_____/

**MEMORANDUM OPINION AND ORDER (I) DETERMINING REMANDED**
**ISSUE, (II) GRANTING FEE APPLICATION (ECF NO. 455), AND**
**(III) DIRECTING PAYMENT OF SANCTIONS AWARD**
**AND REFUND OF OVERPAYMENT**

      In 2017, after an unsuccessful attempt at confirmation, Kim Crawford

("Crawford") dismissed her chapter 11 bankruptcy case (the "Bankruptcy Case"). The

dismissal did not end all litigation between the parties. Instead, it was merely a bump

in the road on a path that included sanctions against Crawford's attorney ("Elam"),

appeals to the United States District Court for the Southern District of Florida (the

"District Court") and the United States Court of Appeals for the Eleventh Circuit (the

"Eleventh Circuit"), Florida Bar grievance proceedings and, ultimately, disbarment

for Elam. After appellate review of the sanctions order (ECF No. 364) (the "<u>Sanctions Order</u>") that prompted the Florida Bar's investigation of Elam, the Eleventh Circuit returned the Bankruptcy Case to this Court on remand.

Before explaining the basis for the Eleventh Circuit's ruling on remand, the Court will first address due process and fairness concerns arising from the unusual history of this Bankruptcy Case. While the appeals of two orders were pending before the District Court, the Honorable Paul G. Hyman went on recall status.[1] Upon his departure, Judge Hyman transferred the Bankruptcy Case to me.

To ensure that both parties received a full and fair ruling on all issues, the Court reviewed the entire history of the Bankruptcy Case and all related appeals. This analysis included consideration of hearing transcripts, filed documents, legal briefing, expert report(s), and all admitted exhibits. The Court immersed itself in the record, paying particular attention to the plan confirmation process.

The Court also held several hearings to better understand the background of this case and the pending factual and legal issues. Attorneys for both Elam and Crawford were forthright and helpful. The Court is grateful for their cooperation and professionalism. Counsel for both parties readily facilitated this Court's ability to provide a full and fair hearing on all relevant issues with proper due process.

After an initial status conference, Elam filed an amended fee application (ECF No. 455) (the "<u>Fee Application</u>"), which drew extensive objections from Crawford

---

[1] *See* General Order 2018-01. Judge Hyman administered this Bankruptcy Case and conducted all hearings in this proceeding prior to April 18, 2018.

(ECF No. 447) (the "Objection"). The basis for Crawford's objections included factual issues enmeshed with the issues on remand. The Court determined that an evidentiary hearing on all issues would be beneficial for two reasons: (i) it would provide the Court with a deeper dive into the case history, and (ii) it would enable the Court to observe first-hand the demeanor and candor of all fact witnesses (including Crawford and Elam).

The Court scheduled an in-person evidentiary hearing on March 27, 2020. Immediately before that date, however, the courthouse closed due to the coronavirus pandemic. While awaiting a rescheduled hearing, the parties engaged in further motion practice, which resulted in the submission of additional memoranda of law and an expert report.

On May 27, 2020, June 1, 2020, and June 19, 2020, the Court conducted a series of videoconference evidentiary hearings (collectively, the "Evidentiary Hearings"). The parties submitted proposed final findings of fact and conclusions of law on August 3, 2020. The Court has devoted much time since that date to an exhaustive analysis of all memoranda, briefings, reports, case history, transcripts, and prior opinions.

## PROCEDURAL HISTORY

The Eleventh Circuit affirmed the Sanctions Order in all respects except to the extent it granted sanctions "based upon its finding that Elam made false representations" and thus "require[d] Elam to return the $14,350 in attorney's fees

awarded."[2] The Eleventh Circuit Judgment vacated the Sanctions Order in part, directed this Court to consider whether Elam was entitled to any fees for his representation of Crawford in her Bankruptcy Case, and remanded Crawford's Bankruptcy Case back to this Court for further proceedings.

After issuance of the Eleventh Circuit Judgment, as noted above, this Court scheduled a status conference to determine whether any additional briefing, discovery, or evidence should be submitted for this Court's consideration of the issue on remand (the "Remanded Issue"). Elam filed a detailed memorandum of law (ECF No. 443) and the Fee Application seeking payment for services rendered prior to March 16, 2017 in the aggregate amount of $34,370, plus reimbursement of $30 in costs.[3]

Crawford's prior counsel initially filed a motion to withdraw from further representation (ECF No. 439), but subsequently withdrew that motion (ECF No. 446) and instead filed the Objection to the Fee Application. Elam responded with a motion to strike (ECF No. 449, later amended as ECF No. 456) the Objection, which the Court denied (ECF No. 469).

Ultimately, the Court held the Evidentiary Hearings on all relevant issues. At the conclusion of the Evidentiary Hearings, the Court solicited proposed findings of fact and conclusions of law from both parties (collectively, the "Proposed Orders"). Having reviewed the Proposed Orders as well as the entire record of this Bankruptcy

---

[2] ECF No. 437 (the "Eleventh Circuit Judgment"), at p. 14.

[3] *See* footnote 7 of the Fee Application.

Case and its related appeals, the Court issues this Memorandum Opinion and Order resolving the Remanded Issue and all other related outstanding matters in the Bankruptcy Case.

## BACKGROUND

When Crawford initially sought confirmation of a chapter 11 plan in early 2017, Elam briefly transferred funds out of his law firm's trust account into a personal account, then back again. That transfer out of the law firm's trust account caused the account balance to dip below the amount of the payment that Crawford had just paid to Elam for his attorneys' fees as counsel to the debtor in possession. Before returning the funds, Elam used the funds "to live [on] for a little bit."[4]

At the time of the transfer, Elam had received interim, but not final, approval of attorney's fees and costs in the amount of $14,350 (the "Interim Fee Award") on March 30, 2015 for services rendered from August 22, 2014 through February 4, 2015.[5] Because payment of any additional fees required court approval at the confirmation hearing on March 15, 2017, Elam's transfer of funds from his firm's trust account in an amount that exceeded the unpaid balance of the Interim Fee Award was unauthorized.

---

[4] ECF No. 362, p. 44:4.

[5] ECF No. 64 ("Interim Fee Order"). The Interim Fee Order, which was entered on March 30, 2015, provided that $14,350 in fees constituted a reasonable compensation amount for services rendered by Elam up to that point. Because Elam's trust account then held $10,000 in funds from Crawford, the Interim Fee Order directed that the $10,000 retainer held in trust be used to partially satisfy the Interim Fee Award. ECF No. 43 (Interim Fee Application), pp. 1-2 and Interim Fee Order, pp. 1-2.  As of the confirmation hearing conducted on March 15, 2017, the remaining $4,350 of the Interim Fee Award remained unpaid.

Counsel for two of Crawford's secured creditors, Bank of New York Mellon and Bayview Loan Servicing, LLC (collectively, "<u>BONY</u>"), became suspicious after reviewing Crawford's monthly operating reports and decided to investigate.[6] In connection with BONY's then-pending motion to dismiss, BONY requested that Elam produce trust account records, which Elam failed to do.[7]

Counsel to BONY vigorously pursued the missing documentation. When the documents failed to materialize, BONY sought and obtained an order granting a motion to compel disclosure of Brett A. Elam, P.A.'s (the "<u>Firm</u>") trust account records for March through May 2017. Elam failed to timely provide his Firm's trust records, and BONY's counsel swiftly moved for entry of an order to show cause and for sanctions against Elam.[8]

About a month later, Crawford consented to dismissal of her Bankruptcy Case with 180 days prejudice against refiling.[9] Upon dismissal, BONY instantly had access to all state law remedies to enforce its rights against its collateral. Despite this turn of events, BONY's counsel continued to press for monetary sanctions against Elam.[10]

On September 1, 2017, this Court entered an order to show cause why Elam should not be suspended from practicing before the Court for making false statements

---

[6] The same attorney represented both creditors.

[7] ECF No. 294, pp. 3-5.

[8] ECF No. 318. The Court denied this motion (ECF No. 343), but later entered an order to show cause of its own initiative (ECF No. 347).

[9] ECF No. 330 (the "<u>Dismissal Order</u>").

[10] ECF Nos. 332 & 337.

about financial information relating to funds held for Crawford.[11] After an evidentiary hearing on September 19, 2017, the Court entered the Sanctions Order and a final judgment (ECF No. 365) (the "Final Judgment").

Paragraph 3 of the Sanctions Order and Final Judgment each provide as follows:

> 3. Mr. Elam is determined to have made false representations to the Court, warranting sanctions pursuant to 11 U.S.C. § 105(a), Local Rule 2090-2(B)(1), and, in the alternative, pursuant to the Court's inherent powers, in order to compensate the Creditor and the Debtor for actual losses sustained by them as the result of Mr. Elam's conduct (i.e., attorney's fees and costs) as well as to coerce compliance (i.e., suspension).

Based upon this conclusion, as well as other factual findings in the Sanctions Order and Final Judgment, paragraphs 8 and 9 of the Sanctions Order and Final Judgment directed Elam to pay BONY and Crawford $42,957.50, as follows:

> 8. Mr. Elam is directed to pay $8,557.50 directly to the Creditor as a sanction pursuant to 11 U.S.C. § 105(a) and, in the alternative, the Court's inherent powers, within 30 days of entry of this Order, absent agreement of the Creditor to a different time period.

> 9. Mr. Elam is to pay $34,400.00 to the Debtor, representing the amount that he transferred from the DIP Account into the Trust Account on March 2, 2017, as a sanction pursuant to 11 U.S.C. § 105(a) and, in the alternative, the Court's inherent powers, within 60 days of entry of this Order, absent agreement of the Debtor to a different time period [12]

Because the Court had previously entered the Interim Fee Order, paragraph 10 of the Sanctions Order and Final Judgment further directed Elam to return any portion of

---

[11] ECF No. 347.

[12] "DIP" is an acronym for "debtor in possession". Each chapter 11 bankruptcy estate has at least one dedicated DIP account in order to allow business operations to continue post-petition.

the Interim Fee Award he had been paid back to Crawford as a sanction pursuant to either 11 U.S.C. § 105(a) or the Court's inherent powers. Specifically, paragraph 10 provides:

> 10. To the extent that the Debtor paid Mr. Elam any of the $14,350.00 in attorney's fees awarded, Mr. Elam is to return any such payments— unless already accounted for by the payment required in paragraph 9 above—to the Debtor as a sanction pursuant to 11 U.S.C. § 105(a) and, in the alternative, the Court's inherent powers, within 60 days of entry of this Order, absent agreement of the Debtor to a different time period.

The Sanctions Order and Final Judgment thus required Elam to pay $8,557.50 to BONY (the "BONY Award") and $34,400 plus $10,000,[13] to Crawford (the "Debtor Award"). In making this determination, the Sanctions Order and Final Judgment each refer to $34,400 as the amount "transferred from the DIP Account into the Trust Account on March 2, 2017", rather than as the amount of a check (the "$34,400 Check")[14] tendered by Crawford to Brett Elam, P.A. on March 1, 2017. This distinction is significant because the $34,400 Check states on its face that it is for "Attorney's Fees", and the Eleventh Circuit based its remand upon the potential truthfulness of this statement.

After entry of the Sanctions Order and the Dismissal Order, and during the ensuing appeals, Crawford agreed to a settlement (the "Settlement") with Elam, his Firm, and the Firm's malpractice carrier (the "Settling Parties") that resulted in a payment of $250,000 to Crawford (the "Settlement Payment").[15] As part of that

---

[13] *See* the extended discussion *infra* regarding the Overpayment.

[14] Rebuttal Exhibit YY.

[15] Rebuttal Exhibit QQ. The Settlement was notarized on February 21, 2019.

Settlement, Crawford provided a general release of all claims against the Settling Parties.[16]

Shortly after Crawford's entry into the Settlement, the Supreme Court of Florida entered an order disbarring Elam.[17]

### THE OVERPAYMENT

Elam's Fee Application seeks a total award of $34,400. In an unusual twist of fate, Elam has already received $44,400, not $34,400, resulting in an overpayment of $10,000. Because the record on appeal (including previous opinions and orders) does not mention this overpayment, the Court will explain the flow of funds in detail.

Elam obtained interim approval of $14,350 in the Interim Fee Order. In partial satisfaction of that award, Elam applied $10,000 from Crawford's pre-petition retainer. That transfer left a balance of $4,350 in approved-but-not-paid fees. So, as of the date of filing his first "final" fee application in August 2016 (ECF No. 171, as amended by ECF No. 175) (the "2016 Final Application"), Elam had already transferred (with court approval) $10,000 from his trust account into his operating account.

Elam then sought an award of $34,400 in his 2016 Final Application.[18] Just prior to confirmation, Elam requested and received the $34,400 Check from Crawford.

---

[16] *Id.*

[17] ECF No. 447-1, Exhibit B.

[18] The Court assumes that the total amount sought by Elam was broken down as follows: (i) $20,020 in unpaid fees for the time period from February 5, 2015 through and including August 26, 2016, (ii) $30 in expenses for the same time period, (iii) $4,350 in fees requested in the Interim Fee Application (ECF No. 43) but not yet paid as of August 26, 2016, and (iv) $10,000 requested and previously paid pursuant to the Interim Fee Order.

9

Because Elam had already applied $10,000 from Crawford's prepetition retainer in partial satisfaction of the Interim Fee Award, Crawford's remittance of the $34,400 Check resulted in an *overpayment* to Elam of $10,000 (the "Overpayment"). This Overpayment has not been addressed in any prior opinions or orders.

In his most recent Fee Application filed on February 18, 2020, Elam repeated his prior request for a total award of $34,400 despite an apparent accumulation of significantly more time in legal fees.[19] The amount of $34,400 is therefore the maximum amount that may be awarded to Elam for compensation and reimbursement of expenses.

## SUMMARY OF REMANDED ISSUE

In the Eleventh Circuit Judgment, the Eleventh Circuit determined that one aspect of the monetary sanctions imposed upon Elam was not well-founded in the record. Specifically, the Eleventh Circuit held that it was error for this Court to conclude that the description of "Attorney's Fees" as the purpose of the $34,400 Check was a false representation.[20] Having made this determination, the Eleventh Circuit further concluded that Elam's disgorgement of all fees previously paid in the Bankruptcy Case did not serve the stated purpose of compensating Crawford for Elam's conduct.[21]

Because the Sanctions Order pointed to two legal bases and multiple factual reasons for disgorgement, the Eleventh Circuit held that it was unclear to what

---

[19] ECF No. 455, at 1, n.1 (representing that actual time records reflect fees totaling $87,955).

[20] Eleventh Circuit Judgment, pp. 10-11.

[21] Eleventh Circuit Judgment, pp. 13-14.

extent disgorgement of fees rested upon the Bankruptcy Court's determination that the "Attorney's Fees" description constituted a false representation. Otherwise stated, the Eleventh Circuit questioned how much of the ruling embodied in the Sanctions Order and Final Judgment was predicated upon the Court's perception of the falsity of Elam's statement regarding the purpose of the $34,400 Check.

In posing this question, the Eleventh Circuit allowed for the possibility that disgorgement of funds was intended to serve multiple purposes, *i.e.* to compensate Crawford as well as to provide a coercive sanction to deter future instances of similar misconduct. This interpretation comports with the language and stated intent of paragraph 3 of the Sanctions Order and Final Judgment.

The difficulty lies in reconciling the text of *all* paragraphs of the Sanctions Order when construed as a whole. Paragraphs 8, 9, and 10 of the Sanctions Order do not clarify whether the disgorged amounts (the BONY Award and the Debtor Award) were each intended to serve as compensation for actual losses, a coercive sanction for misconduct, or both. To resolve the lack of detail in these decretal paragraphs of the Sanctions Order, the Eleventh Circuit directed this Court to consider both (i) the amount of compensation (if any) Elam ultimately deserves for his efforts in this Bankruptcy Case and (ii) whether Elam's conduct warranted disallowing or disgorging fees that might otherwise have been owed.[22]

## PRELIMINARY ANALYSIS

As noted above, this Bankruptcy Case and entry of the Sanctions Order

---

[22] Eleventh Circuit Judgment, p. 14.

predate this judge's tenure. Although the tenor and tone of the Sanctions Order make clear that Judge Hyman found ample reason to impose stiff penalties for inappropriate conduct, the record of prior proceedings before this Court does not directly answer the questions posed by the Eleventh Circuit. Nor, unfortunately, do the supplemental briefing and evidence submitted by both parties. To uncover the answers, the Court undertook a comprehensive analysis that spans pertinent facts, multiple legal standards, and public policy implications.

## APPLICABLE LEGAL STANDARDS

A. <u>Fee Applications</u>

In the context of a chapter 11 bankruptcy case, counsel for a debtor may not access attorney's fees absent adherence to a strict protocol. This procedure includes disclosing all funds presently held in trust as a retainer for a debtor's estate, filing an application for approval of fees and reimbursement of costs, providing notice to all parties in interest of the proposed disbursement from estate funds, and court approval of the amount and basis for any payment upon entry of a written order.

Fees are not "earned" in a bankruptcy case by an attorney for a court-appointed professional, such as counsel to a debtor, trustee, or creditors' committee, until a bankruptcy court has granted final approval of any pending fee application filed by such counsel. As a result, fees for which the Court has granted only interim approval are subject to disgorgement at any time. Such was the case here. This means that, although Elam had authority to access $10,000 of funds in his trust account pursuant to the Interim Fee Order, Elam's ability to retain possession of those funds (and the

12

remaining balance of $4,350) was contingent upon final approval of the Interim Fee Application.[23]

At present, that final approval does not exist. The question of whether the Court should now grant final approval of Elam's attorney's fees and costs described in the Fee Application, and, if so, in what amount, is one aspect of the Remanded Issue. This inquiry is interwoven with the question of what sanctions should be imposed by this Court for Elam's misconduct.

B. DIP Accounting

In the Eleventh Circuit Judgment, the Eleventh Circuit spotlighted and reaffirmed the necessity of ensuring that client funds for attorney's fees are maintained in trust until earned.[24] This premise is not at issue, nor is Elam's violation of the cardinal rule in chapter 11 bankruptcy cases that client funds for attorneys' fees held in an attorney trust account during a chapter 11 case must remain in that account pending court approval of the attorneys' fees. This precept underpins every other legal consideration the Court must undertake in this Memorandum Opinion, including the question of sanctions.

C. Sanctions

The questions that the Court must presently grapple with on remand require inspection of (i) the legal bases supporting the sanctions previously imposed by this

---

[23] Although the Interim Fee Order provided approval of the Interim Fee Award totaling $14,350, $10,000 of this amount was paid from a retainer that the Firm held in trust. Interim Fee Order, pp. 1-2.

[24] Eleventh Circuit Judgment, pp. 11-12.

Court and (ii) the intended nature and purpose of those sanctions.

The Court sanctioned Elam under 11 U.S.C. § 105(a) and pursuant to the inherent power of the Court. Although the facts supporting the imposition of sanctions overlap, the legal standard for each basis differs.

  1. *11 U.S.C. § 105(a)*

Section 105(a) of the Bankruptcy Code ("105(a)") grants bankruptcy courts broad power to fashion any type of order, whether injunctive, compensatory, or punitive, so long as the order is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *Jove Eng'g Inc. v. I.R.S.,* 92 F.3d 1539, 1553 (11th Cir. 1996) (quoting 11 U.S.C.§ 105(a)). Bankruptcy courts may impose sanctions pursuant to § 105(a) for any appropriate reason, including failure to follow a prior court order. *Jove*, 92 F.3d at 1554. No finding of bad faith is necessary for the Court to exercise its statutory authority to ensure that the provisions of the Bankruptcy Code are given proper effect. *Id.*

  2. *Inherent Power*

Unlike statutory contempt powers, invocation of a bankruptcy court's inherent power requires a finding of bad faith. *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575-76 (11th Cir. 1995) (citing *Chambers v. NASCO*, 501 U.S. 32, 49 (1991)). This finding requires the submission of competent evidence, which is why the Court invited further fact-finding as part of its consideration of the Remanded Issue. *See Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1271 (11th Cir. 2013). As with any inquiry regarding bad faith, the Court must consider myriad

14

factors, affording each one the weight appropriate to the specific situation. *C.f. id.* at 1272–73 (analyzing bad faith in the context of dismissal "for cause" under 11 U.S.C. §707(a)); *Phoenix Picadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394-95 (11th Cir. 1988) (listing factors considered in determination that chapter 11 case was filed in bad faith); *Kitchens v. Ga. R.R. Bank & Tr. Co.* (*In re Kitchens)*, 702 F.2d 885, 888-89 (11th Cir. 1983) (analyzing concepts of good faith and bad faith in context of chapter 13); *In re Nunes,* Case No. 20-13577 (Bankr. S.D. Fla. May 8, 2020), slip op. at ECF No. 42, pp. 3-8 (discussing varying approaches to evaluating good faith under 11 U.S.C. § 362(c)(3) and (4)).[25]

### 3. *Coercive versus punitive sanctions*

In a bankruptcy case, monetary sanctions typically serve one of three purposes: (i) compensation for actual losses, (ii) coercion against future misconduct, including enforcement of existing orders, or (iii) punishment for past misconduct (*e.g.* willful violation of the automatic stay or a discharge injunction). *Gowdy v. Mitchell (In re Ocean Warrior, Inc.)*, 835 F.3d 1310, 1316-17 (11th Cir. 2016); *Jove*, 92 F.3d at 1554, 1557-58; *In re Dynamic Tours & Transp., Inc.*, 359 B.R. 336, 342-44 (Bankr. M.D. Fla. 2006). Precedential law prohibits the imposition of punitive sanctions for civil contempt.[26] *Gowdy*, 835 F.3d at 1317; *Jove*, 92 F.3d at 1557-58; *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996) (as abrogated by *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019)); *see also Roth v. Nationstar Mortg., LLC (In re Roth)*,

---

[25] Case No. 20-13577, ECF No. 42.

[26] Rule 9011 is not implicated in this Bankruptcy Case, nor is 28 U.S.C. §1927.

935 F.3d 1270, 1275-76 (11th Cir. 2019) (citing *Hardy* and *Taggart*). As a result, to the extent that monetary sanctions against Elam might serve a purely punitive purpose, they would violate well-established precedent. This is so because the Sanctions Order merely found that Elam was guilty of civil (not criminal) contempt.[27]

Courts, including the Eleventh Circuit, have long struggled with the dividing line between coercive versus punitive sanctions. *Jove*, 92 F.3d at 1557-59. Two considerations help distinguish between coercive and punitive awards: (i) whether the award directly serves the aggrieved party rather than the public interest, and (ii) whether the contemnor may control the extent of the award. *Id*. at 1559.

## LEGAL CONCLUSIONS

A. <u>Sanctions</u>

Without a clear roadmap to determine the correct result years after the fact, the Court is left to answer the question of what sanctions should have been imposed, and in what amount, long after any coercive impact of sanctions could remain, given Elam's disbarment. This creates a highly unusual wrinkle that impacts the Court's present analysis.

The record makes clear that Elam failed to adhere to multiple Court orders requiring disclosure. Elam was therefore in contempt of court. This status merits imposition of sanctions under § 105(a). The Sanctions Order also provides ample factual basis for a finding of bad faith, which supports sanctions under the Court's

---

[27] Sanctions Order, at decretal paras. 1, 2 and 3 (imposing sanctions arising from Elam's failure to comply with Court orders, engaging in professional misconduct, and making false representations to the Court).

inherent power. The Court's analysis must therefore turn away from the legal and factual bases behind the sanctions connected to the Remanded Issue and focus instead upon the *purpose* of those sanctions.

The language of the Sanctions Order and Final Judgment indicate that the sanctions served dual purposes. Each of those two purposes—compensation for actual losses and coercion against future misconduct—is valid, but only one still carries weight.

    *1.*  *Coercive Sanctions*

Monetary sanctions no longer satisfy a coercive purpose under the present circumstances. Elam's disbarment has mooted the necessity of any sanctions award to deter future misconduct and effectively ensured that no further issue can arise in the context of this or any other bankruptcy case in which Elam served as counsel. The passage of time and Elam's disbarment thus invalidate any present factual argument for coercive sanctions to ensure compliance with future Court orders.

    *2.*  *Compensatory Sanctions*

The Court must address the compensatory purpose of sanctions by party, as the circumstances vary between the affected parties.

Crawford's entry into the Settlement mooted any compensatory purpose of sanctions for her because the Settlement provided ample redress for any harm that she suffered during the Bankruptcy Case. Interpretation of the entire Settlement shows that the Settlement Payment included compensation for any difficulties encountered by Crawford arising from Elam's misconduct. As a result, the record

17

shows that continued enforcement of the Debtor Award would serve only to punish Elam for civil contempt, which is not permitted. *Jove*, 92 F.3d at 1557-58; *Hardy,* 97 F.3d 1390 (citing *Jove*, 92 F.3d at 1557-58).

By contrast, the record before the Court indicates that Elam failed to pay the BONY Award; if it had been paid, the compensatory purpose behind the BONY Award would be moot.[28] BONY's entitlement to the BONY Award therefore remains viable unless no legitimate purpose may still be served by continued imposition of that award. The Court will address this thorny question after first determining whether Elam retains any prospective entitlement to attorney's fees.

B. <u>Attorney's Fees and Intervening Sanctions</u>

The question of whether any fees should be awarded to Elam is trickier than one might suspect. Elam rendered services to Crawford as her chapter 11 counsel, and, ordinarily, those services would have value. Because Crawford was able to extend the time during which she maintained possession of multiple properties and was later able to secure a positive outcome for most of her real estate assets, it would appear that at least some benefit was conferred upon Crawford (or Crawford's estate)[29] as a result of Elam's services, however flawed they may have been.

On the flip side, Elam's misconduct is well-documented, and this Court previously found abundant reason to strip Elam of any legal fees previously remitted

---

[28] BONY's counsel appeared at a hearing on January 23, 2020 at 1:30 p.m. (the "<u>Status Conference</u>") and represented that BONY had not received the BONY Award.

[29] The question of whether the benefit of Elam's services accrued to Crawford or to Crawford's estate does not impact the Court's analysis because there are no general unsecured creditors in this Bankruptcy Case. The only creditors listed are the Internal Revenue Service and lenders with claims

by ordering disgorgement in the Sanctions Order. Without the benefit of a time machine, it is virtually impossible to determine to what extent this Court's prior perception of the falsity of the "Attorney's Fees" designation impacted the conclusion that sanctions were warranted (i) at that time and (ii) in an amount that appeared designed to deprive Elam of all fees potentially earned.[30] What is clear from the present record, however, is that two basic purposes of the Debtor Award—compensation for actual losses and coercion against future misconduct by Elam—have both been mooted by intervening events. Because the compensatory purpose of the BONY Award remains and Elam has renewed his request that the Court approve the Fee Application, this Court must press on with its analysis.

Numerous courts, including the Eleventh Circuit, have cautioned restraint in application of a court's inherent power. *Mroz*, 65 F.3d at 1575. For this reason, courts must tailor sanctions to achieve maximum efficacy without punitive impact. *Id*. The same premise holds true when crafting sanctions under §105(a). *Hardy*, 97 F3d. at 1389-90. This prohibition against excessive sanctions requires the Court to balance multiple factors in its assessment of the proper amount of attorneys' fees to be awarded, including (i) the amounts potentially owing to Elam, (ii) the amounts actually paid by Crawford, (iii) any benefit conferred by Elam's services, and (iv) at what point disgorgement of fees becomes punitive rather than coercive.

---

secured by Crawford's real properties. Crawford retained possession post-dismissal of at least one real property and ultimately negotiated consensual resolutions with her secured lenders.

[30] As noted above, I was not the presiding judge at the time of Elam's misconduct and did not author either the Sanctions Order or the Final Judgment.

With those considerations in mind, the Court arrives at the following conclusions: (1) Elam's services to Crawford had some value, and (2) the Settlement provided ample redress for Crawford's actual losses. That being said, Elam's failure to timely comply with this Court's orders predated his discipline by the Supreme Court of Florida, and the Court was not wrong to fashion a coercive remedy when the Sanctions Order was entered for his contempt.

The Court therefore sets the amount of compensation and reimbursement of costs to which Elam is finally entitled at $34,400 (the "<u>Final Fee Award</u>"), which includes the Interim Fee Award. Effectively, this means that in addition to the Interim Fee Award, the Court now awards Elam fees totaling $20,020 for his representation of Crawford for the approximately two-year period after the Interim Fee Order was entered.

Rather than concentrating solely on the specific services Elam rendered during that period, the Court focuses instead on the result Elam achieved for Crawford despite dismissal of the Bankruptcy Case. Crawford ultimately retained significant real property holdings, which appears to have occurred, at least in part, due to settlements that Elam negotiated with Bank of America N.A. and Wells Fargo Bank, N.A. The Court recognizes that these settlements may have been reworked after the dismissal of the Bankruptcy Case but concludes that the agreements Elam previously negotiated almost certainly laid the groundwork for the ultimate result.

The Court finds and determines that a fee of approximately $10,000 charged annually by Elam during a chapter 11 case is not excessive even though Crawford

was not able to confirm a plan. Crawford's ability to initially retain the properties that necessitated the chapter 11 filing in the first instance and negotiate consensual resolutions with her secured lenders demonstrates a benefit arising from Elam's services. Accordingly, the Court will award Elam the full amount sought in the Fee Application in the amount of $34,400 on a final basis, consisting of fees in the amount of $34,370 and reimbursement of costs in the amount of $30.

C. The Overpayment

The Court's determination of a suitable fee award does not eliminate the necessity of addressing the $10,000 Overpayment.

Prior to the attempted confirmation of Crawford's plan, Elam required Crawford to remit the $34,400 Check to him despite prior application of $10,000 from Crawford's retainer in partial satisfaction of the Interim Fee Award. Crawford's tender of the $34,400 Check therefore resulted in the Overpayment. Elam must refund this amount to Crawford. The Court makes this determination based upon equitable principles as well as its authority under § 105(a) to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code.

D. BONY Award

As noted above, the record reflects that Elam has never paid the BONY Award. Elam never sought a stay pending appeal while the Sanctions Order was appealed to the District Court and the Eleventh Circuit. Instead, Elam simply ignored this Court's directive in the Sanctions Order to pay the BONY Award. The Court will

sanction Elam for his failure to comply with this aspect of the Sanctions Order as part of the Court's inherent powers.

## ORDER

Having analyzed the full record of this Bankruptcy Case as it relates to the Remanded Issue and the pending Fee Application, the Court therefore arrives at the following conclusions:

1.    To the extent that the Sanctions Order and Final Judgment required disgorgement of the Interim Fee Award as a remedy for false representations to the Court, that portion of the Order has been vacated by the Eleventh Circuit and will not be reinstated by this Court.

2.    To the extent that any portion of the proceeds of the $34,400 Check remains in Elam's possession, custody, or control despite prior orders of this Court, the Court concludes that disgorgement of those funds to Crawford no longer serves a coercive or compensatory purpose. For that reason, disgorgement is no longer required except as specifically set forth herein.

3.    Elam must refund the Overpayment in the amount of $10,000 to Crawford within 60 days from the date of entry of this Memorandum Opinion and Order.

4.    Counsel to Elam is DIRECTED to file proof of refunding the Overpayment to Crawford, by filing a notice on the docket of this Bankruptcy Case within three days of remittance of the refund of the Overpayment to Crawford.

5.      The BONY Award remains binding upon Elam. To the extent neither Elam nor his Firm have paid the BONY Award to BONY, Elam shall pay the BONY Award directly to BONY within 60 days from the date of entry of this Memorandum Opinion and Order. Payment shall be made to the following address, as provided on Proof of Claim 4-1:

> The Bank of New York Mellon Fka The Bank of New York, As Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-56, Mortgage Pass-Through Certificates, Series 2005-56
> c/o Select Portfolio Servicing, Inc.
> P. O. Box 65450
> Salt Lake City, UT 84165-0450

6.      Payment to BONY of the BONY Award shall include a copy of this Memorandum Opinion and Order, as well as a copy of the Eleventh Circuit Judgment.

7.      Counsel to Elam is DIRECTED to file proof of payment to BONY of the BONY Award on the docket of this Bankruptcy Case, by filing a notice on the docket of this Bankruptcy Case within three days of remittance of the BONY Award to BONY.

8.      All other aspects of the Sanctions Order remain binding.

9.      This Court retains jurisdiction over the interpretation and implementation of this Memorandum Opinion and Order.

###

Copies furnished to:

Douglas C. Broeker, Esq.

Brett A Elam

105 S. Narcissus Ave. #802
West Palm Beach, FL 33401

Julianne R. Frank, Esq.

Gary Freedman, Esq.

Heidi Feinman, AUST

*Attorney Broeker is directed to serve this Opinion and Order upon all interested parties and file a conforming certificate of service.*